**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

KENNETH G. SOBERANIS,

                                      Plaintiff,

      v.

JARYN A. SPELLMAN, et al.,

                               Defendants.

No. 6:25-CV-0676
(AJB/PJE)

---

**APPEARANCES:**

Kenneth G. Soberanis
200 North Levitt Street, Apt. 810
Rome, New York 13440
Plaintiff pro se

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

#### I.  **In Forma Pauperis**

Plaintiff pro se Kenneth G. Soberanis ("plaintiff") commenced this action on May 27, 2025, by filing a complaint. *See* Dkt. No. 1. In lieu of paying this Court's filing fee, plaintiff submitted an application for leave to proceed in forma pauperis ("IFP"). *See* Dkt. Nos. 2, 6. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP.[2] This Court must now assess the merits of plaintiff's complaint pursuant to 28 U.S.C. §§ 1915; 1915A.

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

[2] Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs they may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

## II. **Initial Review**

### A. **Legal Standards**

28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action." *Praileau v. Fischer*, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

Generally, where the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks and citation omitted). The Second Circuit affords pro se litigants a "special solicitude" such "that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks, citations, and footnote omitted).

The Court is not required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which these claims are based. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must plead "enough facts to state a claim to

2

relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint." *Rich v. Akwesasne Mohawk Casino Resort*, No. 8:24-CV-255 (AMN/CFH), 2024 WL 3677262, at *2 (N.D.N.Y. Aug. 6, 2024), *report and recommendation adopted,* No. 8:24-CV-255 (AMN/PJE), 2025 WL 286937 (N.D.N.Y. Jan. 24, 2025) (citing *Simmons v. Abruzzo*, 49 F.3d 83, 86-87 (2d Cir. 1995)). "However, an opportunity to amend is not required where 'the problem with [the plaintiff's] causes of action is substantive' such that 'better pleading will not cure it.'" *Id*. (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

### III.  **Discussion**

#### A.  **Plaintiff Complaint**[3]

Plaintiff's complaint arises out of the following series of events.  On April 5, 2025, at 623 West Thomas Street, Rome, New York, plaintiff answered the front door of the downstairs apartment and was met by Jaryn A. Spellman, #12103, Rome Police Officer ("Spellman").  *See* Dkt. No. 1 at 4.  Spellman asked plaintiff whether he "was supposed to be there."  *Id*.  Plaintiff replied, "Yes."  *Id*.  Thereafter, Spellman "shot [him] at close range with a taser gun."  *Id*.  Plaintiff states that the taser prongs struck him "directly [at]

---

[3] Plaintiff's complaint includes one attachment.  *See* Dkt. No. 1 at 10.  This attachment has also been reviewed in connection with the initial review of plaintiff's complaint.  *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint.") (internal quotation marks and citations omitted).

[his] heart and sternum," resulting in a fractured sternum, nerve damage, and scarring on both hands.  *See id*.  Plaintiff claims that he did not pose any threat to Spellman, did not "have a weapon in his hand," and was not charged with resisting arrest after being tased.  *Id*.  Plaintiff also alleges that after Spellman tased him, but before he was taken to the hospital, Jane Doe, Rome Police Officer ("Jane Doe") tased him a second time, while in a police car.[4]  *See id*. at 4, 6-7.  Jane Doe "was a short Hispanic lady" who "was working as [a] responding officer or transporting officer."  *Id*. at 6.

Upon arriving at the Oneida County CF, plaintiff claims that he was "neglected any medical attention, and pain medicine."  Dkt. No. 1 at 7.  He states that he was eventually "put down for X-rays and to see medical for nerve damage" and "was put on Charlie Block for orientation (5 days)."  *Id*.  Plaintiff states that the medical treatment he received at the Oneida County CF "was very, very poor."  *Id*.

On May 13, 2025, while housed at the Oneida County CF, plaintiff was assaulted by another inmate who struck him four times with a broomstick as he exited the gym.  *See* Dkt. No. 1. at 5.  Plaintiff claims that, at the time of the assault, C.O. Hunter Corcoran[5] ("Corcoran") was the C.O. working in that area of the prison and was "relieving another C.O. on their break."  *Id*.   Plaintiff asserts that Corcoran failed to protect him because the broomstick was not secured in the supply closet located behind the desk.  *See id*.  Plaintiff states that the C.O.s were responsible for securing the broom and that the supply closet was supposed to be "checked and locked at all times, and probably logged after

[4] Plaintiff appears to state that he does not recall being tased a second time but learned of this event from two corrections officers ("C.O.s") while housed at the Oneida County Correctional Facility ("Oneida County CF").  *See* Dkt. No. 1 at 6.  Plaintiff states that the unidentified C.O.s informed him that he was "being very uncooperative when being brought to the jail."  *Id*.
[5] The docket lists Corcoran's name as "Corcoran Hunter," however, the May 13, 2025, misbehavior report lists Corcoran's name as "Hunter Corcoran."  Dkt. No. 1 at 10.  The undersigned will refer to the defendant as Corcoran.

every shift." *Id*. Plaintiff also claims that on May 18, 2025, he filed "multiple grievances" with non-party Lt. Branham regarding this incident but has not received a response. *Id*.

Plaintiff's complaint also includes a copy of a May 13, 2025, misbehavior report, which Corcoran authored, documenting the May 13, 2025, attack on plaintiff at the Oneida County CF. *See* Dkt. No. 1 at 10. The misbehavior report states that Corcoran observed plaintiff get into an argument with a fellow inmate, non-party Felix Robles ("Robles"), as they exited the recreation yard. *See id*. A third inmate, non-party Shakir Elliot ("Elliot"), "attempted to separate the two." *Id*. Robles "then ran and grabbed a broom and began to strike [plaintiff] in the head." *Id*. Plaintiff responded by "striking" Robles in the head with a "closed fist." *Id*. Corcoran radioed a "'Code 2 Pod 4' and ordered the unit to secure their cells." *Id*. Plaintiff "then self-secured to his cell." *Id*. Plaintiff seeks $100,000 for his alleged physical and emotional injuries. *See* Dkt. No. 1-1; Dkt. No. 1 at 9.

## B. **Analysis**[6]

Plaintiff seeks to proceed pursuant to 42 U.S.C. § 1983 against Spellman, Jane Doe, and Corcoran, alleging that his Fourth and Fourteenth Amendment rights were violated. *See generally* Dkt. No. 1; *see also Triestman*, 470 F.3d at 475 ("This policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights

---

[6] Plaintiff's civil cover sheet checks the box indicating "U.S. Government" as the basis of jurisdiction. *See* Dkt. No. 1-1. However, the United States Government is not named as a plaintiff in this action. *See generally* Dkt. No. 1. Reading plaintiff's complaint liberally and affording him due solicitude, it appears plaintiff likely intended to mean that his claims involve federal question jurisdiction. *See Cinotti v. Adelman*, 709 F. App'x 39, 40 (2d Cir. 2017) (summary order) ("[A]lthough [the plaintiff's] pro se complaint does not refer to 42 U.S.C. § 1983, the district court should have construed it liberally as asserting § 1983 claims, which provide a basis for federal question jurisdiction.").

because of their lack of legal training.'") (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

### 1. Defendants' Capacities

Although the complaint lists Spellman as "#12103, Rome Police Officer," Jane Doe as a "Rome Police Officer," and Corcoran as an "Oneida County [CF] [C.O.]", plaintiff does not specify whether he wishes to sue Spellmen, Jane Doe, and Corcoran in their official capacities, individual capacities, or both. *See generally* Dkt. No. 1. Accordingly, "[a]t this early stage, the undersigned will consider whether either a personal or official capacity claim can survive initial review." *Scott v. Crossway*, No. 1:22-CV-500 (BKS/CFH), 2022 WL 16646531, at *6 (N.D.N.Y. Nov. 3, 2022), *report and recommendation adopted,* No. 1:22-CV-500 (BKS/CFH), 2023 WL 34543 (N.D.N.Y. Jan. 4, 2023) (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir. 1993) (citations and quotation marks omitted) ("[I]n many cases, a complaint against public officials will not clearly specify whether officials are sued personally, in their official capacity, or both, and only [t]he course of proceedings . . . will indicate the nature of the liability to be imposed[.]").

### 2. Individual Capacity Claims

#### a. Fourth Amendment: Excessive Force

"Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment . . . ." *Williams v. Leach*, No. 5:24-CV-0721 (BKS/TWD), 2024 WL 3339881, at *3 (N.D.N.Y. July 8, 2024), *report and recommendation adopted,* No. 5:24-CV-721 (BKS/TWD), 2024 WL 4291332 (N.D.N.Y. Sept. 25, 2024) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)); *see also Shamir v. City of New*

*York*, 804 F.3d 553, 556 (2d Cir. 2015) (explaining that "the use of excessive force renders a seizure of the person unreasonable and for that reason violates the Fourth Amendment.").

"Three elements must be objectively examined to determine whether excessive force was used for Fourth Amendment violations: (1) the need for the application of force; (2) the relationship between that need and the amount of force that was used; and (3) the extent of the injury inflicted." *Burrell v. Van Winkler*, No. 6:24-CV-1169 (DNH/MJK), 2024 WL 4957174, at *7 (N.D.N.Y. Oct. 30, 2024), *report and recommendation adopted,* No. 6:24-CV-1169, 2024 WL 4834215 (N.D.N.Y. Nov. 20, 2024) (quoting *Graham*, 490 U.S. at 390) (internal quotation marks omitted). "The extent of intrusion on the suspect's rights must be balanced against the importance of governmental interests." *Id*. (quoting *Tennessee v. Garner,* 471 U.S. 1, 8 (1985)) (internal quotation marks omitted). "The standard for excessive force under the Fourth Amendment is not a demanding one." *Id*. (first citing *Castro v. Cnty. of Nassau,* 739 F. Supp. 2d 153, 176 (E.D.N.Y. 2010) (denying summary judgment on excessive force claim where handcuffs applied to the plaintiff "left imprints on his wrists and caused his wrists to become 'red and sore[,]" finding that "a rational jury could find that the soreness Castro claims to have experienced was sufficiently severe to be a cognizable injury under § 1983"); then citing *Sforza v. City of New York*, No. 07-CV-6122 (DLC), 2009 WL 857496, at *15 (S.D.N.Y. Mar. 31, 2009) (denying summary judgment on excessive force claim and holding that, if proven, "bruising and other nonpermanent injuries are sufficient" to demonstrate excessive force). "It is the *force used*, not the injuries caused, which must be determined to be *de minimis*

7

as a matter of law." *Id*. (quoting *Campbell v. City of New York*, No. 06-CV-5743 (HB), 2010 WL 2720589, at *8 (S.D.N.Y. June 30, 2010)).

> In assessing whether force was objectively reasonable under the Fourth Amendment, a court should pay careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Figuereo v. City of Saratoga Springs*, No. 1:23-CV-0922 (AMN/PJE), 2025 WL 460784, at *8 (N.D.N.Y. Feb. 11, 2025) (quoting *Soares v. Connecticut*, 8 F.3d 917, 921 (2d Cir. 1993) (quoting *Graham*, 490 U.S. at 396)) (internal quotation marks omitted). "This standard focuses on 'a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id*. (quoting *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham*, 490 U.S. at 396)). "The reasonableness determination must include consideration of the fact that law enforcement officers often are forced to make quick decisions under stressful and rapidly evolving circumstances, which may render the calculation of what amount of force is reasonable difficult." *Id*. (citing *Graham*, 490 U.S. at 396-97).

On the other hand, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." *Figuereo*, 2025 WL 460784, at *8 (quoting *Graham*, 490 U.S. at 396) (internal citation omitted). "The Supreme Court's 'Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Id.* (quoting *Graham*, 490 U.S. at 396). "The police are not required to utilize the least amount of force possible

to place someone into custody." *Id*. (quoting *Brennan v. City of Middletown*, No. 18 Civ. 6148 (PED), 2020 WL 3820195, at *7 (S.D.N.Y. July 8, 2020)).

Here, as noted, plaintiff asserts that on April 5, 2025, before he was arrested, Spellman shot him in the chest with taser gun, causing a fractured sternum, nerve damage, and scarring to both of his hands. *See* Dkt. No. 1 at 4. Plaintiff alleges that he did not threaten Spellman, did not "have a weapon in his hand," and was not subsequently charged with resisting arrest after being tased. *Id*. Plaintiff also alleges that Jane Doe tased him a second time while he was in a police car. *See id*. at 6. Plaintiff further states that the C.O.s at the Oneida County CF informed him that he "was being very uncooperative when being brought to the jail." *Id*. Based on the facts alleged in plaintiff's complaint and considering them in the light most favorable to plaintiff, as the Court must, force was used to arrest plaintiff, resulting in injury. *See id*. at 4, 6. Reading plaintiff's complaint liberally, there is no indication that any use of force was necessary to subdue plaintiff either when he answered the door to the apartment or while in custody in the police car. *See id*. at 4, 6. Accordingly, the undersigned recommends that plaintiff's Fourth Amendment excessive force claims against Spellman and Jane Doe in their individual capacities[7] survive Section 1915 review.[8] *See Burrell*, 2024 WL 4957174, at

---

[7] Should the District Judge adopt the undersigned's Report-Recommendation & Order, plaintiff

> is advised that the United States Marshals cannot effect service on a "John or Jane Doe" defendant. In the event that [plaintiff] wishes to pursue this claim against [Jane Doe], he shall take reasonable steps to ascertain [her] identit[y] through discovery or otherwise. [Plaintiff] may then file a motion to amend his pleadings and seek leave of the Court to add such individuals, by name, as defendants to this lawsuit. [Plaintiff] is further advised that if these individuals are not timely served, this action will be dismissed as against them.

*Depalma v. New York*, No. 1:14-CV-0058 (LEK/CFH), 2014 WL 1340018, at *4 (N.D.N.Y. Apr. 3, 2014).
[8] The undersigned makes no conclusion as to whether such claim could survive a properly-filed and supported dispositive motion.

9

*7 (quoting *Graham*, 490 U.S. at 397); *Pulliam v. Lilly*, No. 07-CV-1243 (SJF)(AKT), 2010 WL 935383, at *4 (E.D.N.Y. Mar. 11, 2010) ("[T]he record is devoid of any evidence reflecting a reason for the use of any force . . . i.e., that plaintiff was acting aggressively or otherwise posed a threat . . .  Accordingly, the use of more than *de minimis* force, if even that, under the circumstances presented here, would not be objectively reasonable."); *Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 391 (S.D.N.Y. 2009) (holding that where "the record reflects no reason for any use of force . . . In such circumstances any force is potentially illegitimate.").

b. **Fourteenth Amendment: Failure to Protect**

As stated above, plaintiff alleges that on May 13, 2025, another inmate at the Oneida County CF assaulted him.  *See* Dkt. No. 1 at 5.  As plaintiff was a pretrial detainee at the time of the alleged assault, his failure to protect claim is analyzed under the Due Process Clause of the Fourteenth Amendment.  *See Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017).  "The Due Process Clause of the Fourteenth Amendment protects pre-trial detainees . . . against intolerable prison conditions."  *Damon v. New York*, No. 8:23-CV-74 (GLS/CFH), 2023 WL 11965130, at *14 (N.D.N.Y. Mar. 28, 2023), *report and recommendation adopted,* No. 8:23-CV-74 (GLS/CFH), 2023 WL 11965128 (N.D.N.Y. Apr. 24, 2023) (quoting *Dzwonczyk v. Syracuse City Police Dep't*, 710 F. Supp. 2d 248, 267 (N.D.N.Y. 2008).  "The failure to protect a pre-trial detainee from harm is one type of intolerable prison condition."  *Id*. (quoting *Dzwonczyk*, 710 F. Supp. 2d at 267).  "Prison officials have a duty to take reasonable measures to protect an inmate from violence by other inmates; failure to do so may constitute a constitutional violation."  *Rodriguez v. Goins*, No. 9:18-CV-1380 (TJM/DJS), 2020 WL 6150984, at *4 (N.D.N.Y. Aug. 17, 2020),

*report and recommendation adopted,* No. 9:18-CV-1380, 2020 WL 6146597 (N.D.N.Y. Oct. 20, 2020) (quoting *Baker v. Tarascio*, No. 3:05-CV-0548 (RNC), 2009 WL 581608, at *2 (D. Conn. Mar. 6, 2009)) (internal quotation marks omitted); *Little v. Cnty. of Nassau*, 708 F. Supp. 3d 252, 263 (E.D.N.Y. 2023) (quoting *Walker v. Schult*, 717 F.3d 119, 128 (2d Cir. 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994))) ("[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners.").

"However, '[n]ot . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety.'" *Rodriguez*, 2020 WL 6150984, at *4 (quoting *Zimmerman v. Macomber*, No. 95 CIV. 0882 (DAB), 2001 WL 946383, at *6 (S.D.N.Y. Aug. 21, 2001) (quoting *Farmer*, 511 U.S. at 834)). "Rather, an official must act with 'deliberate indifference to a substantial risk of serious harm to an inmate.'" *Little*, 708 F. Supp. 3d at 263 (quoting *Farmer*, 511 U.S. at 828).

> A plaintiff must make two showings to prove a deliberate-indifference claim under the Fourteenth Amendment, including when invoking a theory of failure to protect against (i.e., prevent) an inmate attack. The first is "an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process." The second is "a 'subjective prong' . . . showing that the officer acted with at least deliberate indifference to the challenged conditions."

*Little*, 708 F. Supp. 3d at 263 (quoting *Darnell*, 849 F.3d at 29); *LaPietra v. Mika*, No. 9:19-CV-1527 (TJM/TWD), 2021 WL 7367089, at *4 (N.D.N.Y. Nov. 9, 2021), *report and recommendation adopted,* No. 9:19-CV-1527 (TJM/TWD), 2022 WL 325201 (N.D.N.Y. Feb. 3, 2022) (citing *Taylor v. City of New York*, No. 16 Civ. 7857 (NRB), 2018 WL 1737626, at *12 (S.D.N.Y. Mar. 27, 2018) ("Although *Darnell* involved a Fourteenth

Amendment challenge to a prisoner's conditions of confinement, its holding applies with equal measure to failure to protect claims.")).

### i. **Objective Prong**

To establish the objective prong, a plaintiff "must show that the conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to [the plaintiff's] health." *Little*, 708 F. Supp. 3d at 263 (quoting *Darnell*, 849 F.3d at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)). "In other words, the conditions must pose a 'substantial risk of serious harm.'" *Id*. (quoting *Lewis v. Siwicki*, 944 F.3d 427, 431 (2d Cir. 2019)); *Stennett v. New York State*, No. 25-CV-2967 (LTS), 2025 WL 2452210, at *2 (S.D.N.Y. Aug. 26, 2025) (quoting *Heisler v. Kralik*, 981 F. Supp. 830, 837 (S.D.N.Y. 1997)) ("In assessing whether the risk of . . . violence . . . is 'sufficiently serious' to trigger constitutional protection, the focus of inquiry must be, not the extent of the physical injuries sustained in an attack, but rather the existence of a 'substantial risk of serious harm.'"). "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'" *Id*. (quoting *Darnell*, 849 F.3d at 30) (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995))); *Walker*, 717 F.3d at 125 (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)).

"In cases brought under a failure to protect theory, 'it does not matter . . . whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.'" *Little*, 708 F. Supp. 3d at 263-64 (quoting *Farmer*, 511 U.S. at 843). "Thus, a plaintiff may satisfy the objective element by showing either a substantial risk of harm from a specific assailant or a more general risk of harm

due to the conditions at the time of the attack." *Id*. at 264 (quoting *Ataroua v. Tamir*, No. 22-CV-10371 (LTS), 2023 WL 2216139, at *3 (S.D.N.Y. Feb. 22, 2023) (quoting *Hurst v. Perez*, No. 15-CV-4703 (VB), 2017 WL 187532, at *2 (S.D.N.Y. Jan. 13, 2017))) (internal quotation marks omitted).

"[R]elying on a general risk of harm requires a showing 'of a history of prior inmate-on-inmate attacks similar to the one suffered by the plaintiff and that the measures th[at] should have taken in response to such prior attacks would have prevented the attack on the plaintiff.'" *Murray v. Cnty. of Albany*, No. 9:22-CV-592 (MAD/PJE), 2025 WL 904515, at *7 (N.D.N.Y. Mar. 25, 2025) (quoting *Little*, 708 F. Supp. 3d at 266 (quoting *Parris v. N.Y. State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013)); *Mehne v. Rochester Psychiatric Ctr.*, No. 22-CV-6110 (CJS), 2022 WL 17488633, at *7 (W.D.N.Y. Dec. 7, 2022) (quoting *Vazquez v. City of New York*, No. 1:21-CV-1573 (PAE)(VF), 2022 WL 2704763, at *10-11 (S.D.N.Y. June 17, 2022), *report and recommendation adopted*, No. 21-CIV-1573 (PAE)(VF), 2022 WL 2704469 (S.D.N.Y. July 11, 2022) (noting that Fourteenth Amendment deliberate indifference claims based on a failure to protect against a general risk of harm to all inmates require a plaintiff to "allege that the defendants knew, or should have known, of a history of prior . . . attacks similar to the one suffered by the plaintiff, and that the measures they should have taken in response to such prior attacks would have prevented . . . or mitigated the risk of harm.") (internal citations omitted).

Even affording plaintiff due solicitude and liberally construing his complaint, plaintiff has failed to sufficiently plead that on May 13, 2025, he faced "a substantial risk of harm from a specific assailant or a more general risk of harm due to the conditions at the time

of the attack." *Little*, 708 F. Supp. 3d at 264 (quoting *Ataroua*, 2023 WL 2216139, at \*3) (quoting *Hurst*, 2017 WL 187532, at \*2)).  As discussed above, plaintiff's complaint alleges that he was attacked by another inmate whose name he was "not sure of" as he left the gym. Dkt. No 1. at 5.  Plaintiff's complaint also attaches a copy of a May 13, 2025, incident report, documenting that, immediately prior to the assault, he was in an argument with Robles and another inmate attempted to separate the two.  *See id*. at 10.

Here, plaintiff has not alleged that he faced "a substantial risk of harm from a specific assailant" or Robles.  *Little*, 708 F. Supp. 3d at 264 (quoting *Ataroua*, 2023 WL 2216139, at \*3) (quoting *Hurst*, 2017 WL 187532, at \*2)).  Plaintiff does not allege that he had any interactions with Robles or that he was previously threatened or attacked by Robles prior to May 13, 2025.  *See generally* Dkt. No. 1.  Similarly, plaintiff does not allege that he had any interactions with, or was otherwise threatened or attacked by, any other inmate prior to May 13, 2025.  *See id*.  Although May 13, 2025, incident report, states that plaintiff had an argument with Robles immediately prior to the assault, the handwritten portion of plaintiff's complaint does not provide any additional detail or context of the events immediately prior to the attack.  *See* Dkt. No. 1 at 10; *see generally* Dkt. No. 1.  Plaintiff does not make any allegations regarding the argument with Robles.  *See generally* Dkt. No. 1.  Similarly, plaintiff does not allege that he feared any threat of violence from Robles or any other inmate before or after the argument.  *See id*.

Instead, the handwritten portion of plaintiff's complaint focuses on Corcoran's purported failure to secure the broom in the supply closet behind the C.O.'s desk.  *See* Dkt. No. 1 at 5. Affording plaintiff due solicitude, plaintiff could potentially be alleging that the unsecured broom, by itself, created a general risk of harm in the area of the Oneida

14

County CF that the March 13, 2025, attack occurred.  Yet, plaintiff does not connect the failure to secure the broom to any increased threat that he was going to be attacked.  *See generally* Dkt. No. 1.  Plaintiff does not state that he was aware of the unsecured broom prior to being attacked or that as a result of the broom being unsecured, he had a greater fear for his safety.  Rather, plaintiff states that the broom was supposed to be secured in the supply closet and the supply closet was to be "locked at all times."  Dkt. No. 1 at 5.  Further, plaintiff does not allege that the Oneida County CF had a "history of prior inmate-on-inmate attacks similar to the one suffered by the plaintiff" or that the Oneida County CF failed to take any corrective measures in response to such attacks.  *Murray*, 2025 WL 904515, at *7 (quoting *Little*, 708 F. Supp. 3d at 266 (quoting *Parris*, 947 F. Supp. 2d at 363).

Based on the foregoing, the undersigned concludes that plaintiff fails to satisfy the objective prong.  *Little*, 708 F. Supp. 3d at 263; *Rodriguez*, 2020 WL 6150984, at *4 (quoting *Velez v. City of New York*, No. 1:17-CV-9871 (GHW), 2019 WL 3495642, at *4 (S.D.N.Y. Aug. 1, 2019)) ("In order for a corrections officer to be held liable for failing to protect an inmate from another inmate, the corrections officer must have been aware of a 'clear and specific threat' of harm to that inmate."); *Cf. Rivers v. Dep't of Corr. NYC*, No. 24-CV-0120 (LTS), 2024 WL 1621417, at *3 (S.D.N.Y. Apr. 15, 2024) ("[Plaintiff] does not allege facts suggesting that he has a specific reason to fear an assault (either from a particular individual or because of a specific reason making him a target); [or] that he has notified anyone at the facility of a specific risk of harm.").

### ii.  **Subjective Prong**

To establish the necessary subjective showing under the Fourteenth Amendment, i.e. show deliberate indifference, Plaintiff must prove that a

given Individual Defendant "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [the plaintiff] even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."

*Little*, 708 F. Supp. 3d at 267 (quoting *Darnell*, 849 F.3d at 35).  "Though called the 'subjective prong,' this determination 'is defined objectively' and 'can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm.'" *Id.* (quoting *Darnell*, 849 F.3d at 35).

The undersigned concludes that plaintiff has not established that Corcoran acted recklessly or subjected him to a substantial risk of harm.  *Little*, 708 F. Supp. 3d at 267 (quoting *Darnell*, 849 F.3d at 35).  Plaintiff's complaint does not suggest that Corcoran knew or should have known that plaintiff and Robles were going to have a physical altercation or that Robles was going to hit plaintiff with a broom.  *See id.*; *see also* Dkt. No. 1 at 5.  Plaintiff does not state that he had any prior interactions with Robles or that he informed the Oneida County CF that Robles previously threatened his safety.  *See generally* Dkt. No. 1.  Instead, plaintiff conclusorily asserts that Corcoran should have known that the broom was not secured in the supply closet located behind the C.O.s' desk.  *See* Dkt. No. 1 at 5.  Yet, plaintiff does not provide any additional information or factual support for this allegation.  Plaintiff alleges that immediately prior to or at the time of the attack, Corcoran was "relieving another C.O. on their break."  *Id*.  Plaintiff does not state how long Corcoran had been stationed in that area of the prison prior to the attack or whether Corcoran could have been aware that the broom used to attack him was left unsecured prior to the attack.

16

As written, plaintiff's complaint does not suggest that Corcoran was anything more than negligent in being unaware that the broom was left unsecured, and negligence does not suffice to establish deliberate indifference. *See Rodriguez*, 2020 WL 6150984, at *4 ("It is possible that Defendant's handling of the situation was negligent, but it does not establish deliberate indifference, exhibited by the type of intentional or reckless conduct required under *Darnell*."); *Reed v. Does 1-6*, No. 3:24-CV-1359 (KAD), 2024 WL 4872150, at *3 (D. Conn. Nov. 22, 2024) ("Plaintiff's allegations provide no suggestion that Doe 1 had any awareness that Plaintiff would or could be subjected to assault from another inmate when he left him in the corridor. Doe 1 may have acted negligently, but negligent conduct does not support a deliberate indifference claim of constitutional dimension.").

Further, the May 13, 2025, incident report states that as soon as the fight began, Corcoran radioed in "'Code 2 Pod 4' and ordered the unit to secure to their cells." Dkt. No. 1 at 10. "[P]laintiff has also not included facts suggesting that [Corcoran,] who observed the incident[,] failed to act promptly to mitigate additional harm or otherwise behaved inappropriately." *Stennett*, 2025 WL 2452210, at *2. "Even if the [undersigned] assumes that Plaintiff faced an objectively serious risk of harm, there are no allegations in the complaint suggesting that [Corcoran] failed to act with reasonable care to mitigate the risk to him." *Id*. Therefore, the undersigned concludes that plaintiff fails to satisfy the subjective prong. *See Little*, 708 F. Supp. 3d at 267 (quoting *Darnell*, 849 F.3d at 35).

Accordingly, as plaintiff has failed to establish the objective or subjective prongs, plaintiff has not sufficiently alleged a Fourteenth Amendment failure to protect claim against Corcoran. *See Little*, 708 F. Supp. 3d at 263 (quoting *Darnell*, 849 F.3d at 29). However, although unlikely based on the current complaint, in light of special splicitude

17

and because it is potentially possible that plaintiff could plead additional facts to satisfy both the objective and subjective prongs, the undersigned recommends dismissing plaintiff's Fourteenth Amendment failure to protect claim against Corcoran without prejudice and with leave to amend.

### c. **Fourteenth Amendment: Deliberate Medical Indifference**

"To state a claim for deliberate indifference, a pretrial detainee must satisfy a two-pronged test." *Oteri v. Palmatier*, No. 9:23-CV-986 (AMN/ML), 2024 WL 808774, at *5 (N.D.N.Y. Feb. 27, 2024). "First, the alleged deprivation of adequate medical care must be sufficiently serious." *Id*. (quoting *Lloyd v. City of New York*, 246 F.Supp.3d 704, 717 (S.D.N.Y. 2017) (quoting *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013))) (internal quotation marks omitted). "Second, the defendant must act with a 'sufficiently culpable state of mind.'" *Id*. (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).

The first prong is objective and "requires that the alleged deprivation of medical treatment is, in objective terms, sufficiently serious – that is, the prisoner must prove that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Oteri*, 2024 WL 808774, at *5 (quoting *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998))). The second prong is a subjective prong, under which "a pretrial detainee alleging deliberate indifference to serious medical needs under the Fourteenth Amendment must establish . . . that the defendant either: 'acted intentionally to impose the alleged condition' or 'recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee.'" *Id*. (quoting *Logan v. City of Schenectady*, No. 18-CV-1179

18

(BKS/CFH), 2019 WL 3803631, at *4 (N.D.N.Y. Aug. 13, 2019) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017))); *Spiezio v. Martinez*, 653 F. Supp. 3d 8, 26 (N.D.N.Y. 2023) (noting that a pretrial detainee must demonstrate a defendant acted with more than negligence).

Here, plaintiff's complaint alleges that upon arriving at the Oneida County CF, he was (1) "neglected [of] any medical attention and pain medicine", (2) "put down for X-rays and to see medical for nerve damage", and (3) "put on Charlie Block for orientation (5 days)." Dkt. No. 1 at 7. Plaintiff further alleges that when he finally did receive medical care at the Oneida County CF, the "medical attention [he received] was very very poor." *Id*. Affording plaintiff due solicitude, the undersigned concludes that plaintiff's allegation of suffering from nerve damage satisfies the objective prong as a condition that may produce "extreme pain." *Oteri*, 2024 WL 808774, at *5 (quoting *Johnson*, 412 F.3d at 403 (quoting *Hemmings*, 134 F.3d at 108)). Conversely, the undersigned concludes that plaintiff fails to satisfy the subjective prong because plaintiff's complaint "does not plausibly suggest that any named defendant was personally involved in plaintiff's medical treatment or decisions related to plaintiff's medical care." *Id*. (quoting *Logan*, 2019 WL 3803631, at *4 (quoting *Darnell*, 849 F.3d at 35)). The only named defendant who worked at the Oneida County CF is Corcoran, and all of plaintiff's allegations against Corcoran involve the May 13, 2025, assault. *See* generally Dkt. No. 1. Plaintiff's complaint does not establish any connection between Corcoran and plaintiff's medical care, or lack thereof, at the Oneida County CF. Plaintiff's complaint "is devoid of any allegations . . . that [Corcoran] had knowledge of plaintiff's medical care or that plaintiff requested medical attention from [Corcoran], or that [Corcoran] denied such requests." *Oteri*, 2024 WL

19

808774, at *5. Plaintiff's complaint does not "attribute" his denial of medical care upon arrival at the Oneida County CF to Corcoran. *Id*. "Moreover, even if he had, those statements, without more, do[] not suggest that [Corcoran] acted intentionally with respect to his condition or recklessly failed to act with reasonable care to mitigate the risks that his condition posed." *Id*. Therefore, the undersigned concludes that plaintiff has failed to establish the second prong that a defendant acted with a "sufficiently culpable state of mind." *Oteri*, 2024 WL 808774, at *5 (quoting *Hathaway*, 99 F.3d at 553).

Accordingly, the undersigned recommends that plaintiff's Fourteenth Amendment medical indifference claim be dismissed without prejudice and with leave to amend, because it is possible that plaintiff can name an individual(s) responsible for his medical care at the Oneida County CF and demonstrate that that individual(s) acted with a reckless or intentional state of mind. *See Oteri*, 2024 WL 808774, at *5; *see also Pierrot v. Hahn*, No. 9:15-CV-1415 (DNH/CFH), 2017 WL 4221117, at *9 (N.D.N.Y. July 28, 2017), *report and recommendation adopted,* No. 9:15-CV-1415 (DNH/CFH), 2017 WL 4221072 (N.D.N.Y. Sept. 21, 2017) ("[T]o bring a claim for [deliberate] indifference to medical needs, plaintiff must identify the medical staff against whom he seeks to bring the claim.").

### 3. **Official Capacity Claims**

#### a. *Monell*

Plaintiff's complaint alleges that on April 5, 2025, Spellman and Jane Doe worked for the Rome Police Department, and on May 13, 2025, Corcoran worked for the Oneida County CF. *See* Dkt. No. 1 at 4-6. The Rome Police Department[9] and the Oneida County

---

[9] City of Rome, New York, "Police Department" https://romepd.com/ (last visited Apr. 21, 2026).

CF[10] are both municipal entities.  As such, to the extent that plaintiff seeks to proceed against Spellman and Jane Doe in their official capacities as police officers with the Rome Police Department, and as against Corcoran in his official capacity as a C.O. with the Oneida County CF, plaintiff can only proceed with section 1983 claims pursuant to *Monell*.

"Municipalities may be sued directly under [Section] 1983" pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978) "for constitutional deprivations inflicted upon private individuals pursuant to governmental custom, policy, ordinance, regulation, or decision."  *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (citing *Monell*, 436 U.S. at 690-91). "To set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead that a deprivation of his constitutional rights was 'caused by a governmental custom, policy, or usage of the municipality.'"  *Dougal v. Lewicki*, No. 1:23-CV-1167 (DNH/CFH), 2023 WL 6430586, at *10 (N.D.N.Y. Oct. 3, 2023), *report and recommendation adopted*, 2023 WL 7013384 (N.D.N.Y. Oct. 25, 2023) (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. at 690-91)). "Municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right; it 'may not be held liable on a theory of respondeat superior.'"  *Id*. (quoting *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000)).  An "official policy or custom" can be pleaded as follows:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees.

---

[10] Oneida County Sheriff's Office, Oriskany, New York, "Corrections"
https://sheriff.oneidacountyny.gov/divisions/corrections/ (last visited Apr. 21, 2026).

*Id.* (quoting *Dorsett-Felicelli, Inc. v. Cty. of Clinton*, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005)) (internal citations omitted); *see also Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (explaining that, to state an official policy claim under *Monell*, the plaintiff "must do more than simply state that a municipal policy . . . exists"); *Coleman v. Cnty. of Suffolk*, 685 F. App'x 69, 72 (2d Cir. 2017) (summary order) ("Where . . . the conduct of individual defendant officers does not violate the plaintiff's constitutional rights, the municipality is generally not liable for a policy or practice pursuant to which the conduct was performed."); *Fleming v. City of New York*, No. 18-CV-4866 (GBD/JW), 2023 WL 1861223, at *1 (S.D.N.Y. Feb. 9, 2023) (noting that, in some situations, a municipality may be held liable under *Monell* even if a plaintiff is unable to establish liability against individual defendants).

Under *Monell*, the proper defendant is the municipality itself, and a claim may only proceed against a municipality within the limited confines of *Monell*. *See Batista*, 702 F.2d at 397 (citing *Monell*, 436 U.S. at 690-91). Here, plaintiff has not pled that his constitutional rights were violated due to an official City of Rome or Oneida County policy, a persistent and widespread custom or practice, failure to train or supervise, or because a policy-making official's deliberate conduct deprived him of a constitutional right. *See Dougal*, 2023 WL 6430586, at *10 (quoting *Dorsett-Felicelli, Inc.*, 371 F. Supp. 2d at 194); *see also Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297-98 (2d Cir. 2020). Instead, he summarily concludes that his rights were violated because Spellman and Jane Doe tased him, and Corcoran failed to protect him from a fellow inmate at the Oneida County CF. *See* Dkt. No. 1 at 4-7. However, as discussed above, "a municipality may not be held liable under 1983 'solely because it employs a tortfeasor.'" *Mulqueen v. Herkimer Cnty.*

22

*Child Protective Servs.*, No. 6:22-CV1-301 (TJM/ATB), 2023 WL 4931679, at \*6 (N.D.N.Y. Aug. 2, 2023), *report and recommendation adopted*, No. 6:22-CV-1301 (BKS/MJK), 2024 WL 756833 (N.D.N.Y. Feb. 23, 2024) (citing *Cowan v. City of Mt. Vernon*, 95 F. Supp. 3d 624, 636 (S.D.N.Y. 2015) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)); *Dougal*, 2023 WL 6430586, at \*10 (quoting *Jeffes*, 208 F.3d at 56).  Plaintiff does not connect Spellman or Jane Doe's conduct to the City of Rome or Corcoran's conduct to Oneida County.  *See generally* Dkt. No. 1.

Therefore, it is further recommended that to the extent plaintiff intends to raisesclaims against Spellman, Jane Doe, and Corcoran in their official capacities, such claims be dismissed for failure to plead a *Monell* claim.  *See Batista*, 702 F.2d at 397 (citing *Monell*, 436 U.S. at 690-91); *Dougal*, 2023 WL 6430586, at \*10 (quoting *Dorsett-Felicelli, Inc.*, 371 F. Supp. 2d at 194).  Accordingly, in light of special solicitude, as it is possible that plaintiff may potentially be able to amend his complaint to plead that his constitutional rights were violated due to an official City of Rome or Oneida County policy, persistent and widespread custom or practice, a failure to train or supervise, or because a policy-making official's deliberate conduct deprived him of constitutional rights, the undersigned recommends that plaintiff's claims against Spellman, Jane Doe, and Corcoran in their official capacities, to the extent they are raised, be dismissed without prejudice and with leave to amend.

## IV.  **Leave to Amend**

Generally, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Romano v. Lisson*, 711 F. App'x 17, 19 (2d Cir. 2017)

(summary order) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quotation omitted)). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.'" *Edwards v. Penix*, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Here, the defects in plaintiff's (1) claims against all defendants in their official capacities; (2) Fourteenth Amendment failure to protect claim against Corcoran in his individual capacity; and (3) Fourteenth Amendment medical indifference claim can potentially be cured by a better pleading. Accordingly, it is recommended that insofar as plaintiff seeks to (1) proceed against all defendants in their official capacities, (2) proceed against Corcoran in his individual capacity for violating his Fourteenth Amendment rights, and (3) otherwise raise a claim seeking Fourteenth Amendment medical indifference, such claims be dismissed without prejudice and with leave to amend.[11]  It is also recommended that plaintiff's Fourth Amendment excessive force claim against Spellman and Jane Doe in their individual capacities survive Section 1915 review.

## IV. **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. Nos. 2, 6) is **GRANTED**; and it is

---

[11] In the event the District Judge adopts the undersigned's Report-Recommendation & Order and plaintiff is permitted to file an amended complaint, plaintiff is advised that any amended pleading cannot incorporate a prior pleading by reference and may not attempt to replead claims that have already been dismissed by this Court with prejudice. Any amended pleading supersedes and replaces a prior pleading in its entirety. An amended pleading must establish this Court's jurisdiction and state a claim for relief against each named defendant for whom leave to replead was granted according to Rules 8 and 10 of the Federal Rules of Civil Procedure.

**RECOMMENDED**, that insofar as plaintiff seeks to proceed against all defendants in their official capacities for monetary damages (Dkt. No. 1), such claims be **DISMISSED without prejudice and with opportunity to amend** as specified herein; and it is further

**RECOMMENDED**, that plaintiff's Fourteenth Amendment failure to protect claim against Corcoran in his individual capacity (Dkt. No. 1), be **DISMISSED without prejudice and with opportunity to amend**; and is further

**RECOMMENDED**, that plaintiff's Fourteenth Amendment medical indifference claim (Dkt. No. 1), be **DISMISSED without prejudice and with opportunity to amend**; and is further

**RECOMMENDED**, that plaintiff's Fourth Amendment excessive force claim against Spellman and Jane Doe in their individual capacities survive Section 1915 review;[12] and it is further

**RECOMMENDED**, that if the District Judge adopts this Report-Recommendation & Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file an amended complaint; and it is further

**RECOMMENDED**, that (a) if the District Judge adopts this Report-Recommendation & Order and plaintiff is permitted to amend his complaint, upon filing of the amended complaint – or upon the expiration of plaintiff's time to do so – the Clerk shall return the case to the Magistrate Judge for further review; and (b) if plaintiff does not so file an amended complaint (1) it will be deemed as an abandonment of any claims for which leave to replead has been granted and will result in judgment being entered against plaintiff on these claims without further order by the Court, and (2) service of the original

---

[12] It is recommended that the complaint (as to this claim) not be served on defendants until after it is determined whether plaintiff will be permitted to, and will seek, to amend as to his other claims.

complaint will be made for any claims that were permitted to proceed from the original complaint, with all other claims deemed stricken; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72.[13]

Dated:  May 4, 2026
Albany, New York

_____
Paul J. Evangelista
U.S. Magistrate Judge

---

[13] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen-day (14) period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. *See* FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. *See id.* § 6(a)(1)(c).